JOHN H. WAUGH et al., Appellants, *v.* SEABOARD BANK, Respondent.

The firm of H. & W., members of the Petroleum Exchange of the city of New York, contracted to sell to plaintiffs forty-three thousand barrels "regular" oil, *i. e.*, oil free from storage charges. Defendant, which acted as a clearing-house for the members of said exchange, held a large quantity of oil belonging to said firm as security for loans. It agreed to transfer to plaintiffs forty-three thousand barrels of the oil in its hands to answer said contract of sale on receiving the purchase-price. This was accordingly paid to it, and it transferred to plaintiffs oil certificates for the said number of barrels, holding them, however, as security for a loan made by it to plaintiffs of part of the purchase-money. By the rules of said exchange only "regular" oil was a good delivery on such a contract. Defendant was familiar with these rules. The certificates so transferred and held by defendant were subject to storage charges, and plaintiff was charged with the amount thereof. In an action to recover the same, *held*, the facts justified a finding that, under the agreement between the parties, the oil to be transferred to plaintiff was to be free from storage charges up to the time of the transfer.

The referee, after finding that H. & W. were, by their contract, obligated to deliver oil with storage charges paid up to the time of delivery, found that defendant agreed to transfer to plaintiffs' firm certificates to the amount of or representing such forty-three thousand barrels of oil, which, under the custom, necessarily, would be certificates having the storage charges paid. It was claimed by defendant that the referee put his judgment against defendant on a custom of the trade which was not binding upon it, and did not control the transaction. *Held*, untenable; that the import of the two findings taken together was that defendant agreed to transfer such oil as H. & W. had obligated themselves to deliver.

The prevailing party is entitled to the most favorable construction of the findings of a referee to uphold the judgment.

Reversed, 22 J. & S. 283.

(Argued April 26, 1889; decided June 4, 1889.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made February 9, 1887, which

reversed a judgment in favor of plaintiffs, entered upon the report of a referee, and granted a new trial.

The complaint herein alleged, in substance, that the firm of Hilton & Waugh contracted to sell and deliver to plaintiffs forty-three thousand barrels of oil, to be represented by certificates known as United Pipe Line certificates, and the storage charges paid to date; that defendant, to whom said firm had pledged certificates for a much larger amount, agreed to transfer to plaintiff certificates, called for by the contract, for forty-three thousand barrels upon plaintiffs' payment to it of the contract-price, the certificates to be held by defendant, however, as security for a loan of part of the purchase-money. That plaintiffs made the payment as agreed, but that defendant, instead of transferring the certificates agreed upon, transferred certificates known as tide-water certificates, subject to and upon which there were accumulated charges to the amount of $2,924.35, which were charged to plaintiffs. The action was brought to recover this amount.

The material facts are stated in the opinion.

*Henry C. Willcox* for appellants. The custom requiring all the transactions not otherwise specified to be in United Pipe Line oil with all charges paid, having been shown to exist and to have been within the knowledge of defendant, it will be deemed to have contracted accordingly. (*Walls* v. *Bailey*, 49 N. Y. 469.) Appellate tribunals, in reviewing judgments rendered upon a trial before a court or referee, should indulge in all reasonable presumptions in support of the judgment of such tribunals, and assume that they considered all of the evidence in the case, and came to a conclusion adverse to the appealing party thereon, where it is necessary to support the judgment rendered. (*Day* v. *Town of New Lots*, 107 N. Y. 157.) Parties are presumed to contract in reference to the usage of the particular place or trade in or as to which they enter into agreement, when it is so far established and so far known to them that it must be supposed that their contract was made in reference to it. (*Walls* v. *Bailey*, 49 N. Y.

469.) In the absence of objections to the sufficiency of a complaint, it is the duty of the trial court to give the plaintiffs the benefit of any cause of action established by the evidence; and upon appeal this court will consider the cause of action disclosed by the evidence without regard to any objections to the sufficiency of the pleadings which were not made in the court below. (*Knapp* v. *Simon*, 96 N. Y. 284.)

*Frederick S. Parker* for respondent. It must be presumed that the judgment was not reversed and a new trial granted upon a question of fact; and the only inquiry is, whether any error of law was committed by the referee. (Code of Civil Procedure, § 1338; *Davis* v. *Leopold*, 87 N. Y. 620.) A finding of fact, without any evidence to sustain it, is an error of law, and presents a question of law subject to review in this court. (*Sickles* v. *Flanagan*, 79 N. Y. 224; Code of Civ. Pro. § 993.) Customs sought to be interpolated into a contract not expressing them must be strictly proved and shown to be general, uniform and well understood. (*Dickinson* v. *City of Poughkeepsie*, 75 N. Y. 77; *Field* v. *Banker*, 9 Bosw. 467; *Wilcox* v. *Wood*, 9 Wend. 346; *Allen* v. *Merchants*, 15 id. 482; *Hawes* v. *Lawrence*, 3 Sandf. 193; 4 N. Y. 345; *Kendall* v. *Russell*, 5 Dana, 501; *S. F. and C. Press Co.* v. *Standard*, 44 Mo. 71; *Willis* v. *Tibbals*, 33 N. Y. Super. Ct. 220, 228, 230; Lawson on Usages and Customs, 99; *Eddie* v. *East India Co.*, 1 Wm. Black. 295; 2 Burr. 1216; *Winthrop* v. *Union Ins. Co.*, 2 Wash. C. C. 7.) A party cannot try an action upon an issue raised in the pleadings, and afterwards claim to recover upon a different theory. (*Volkening* v. *De Graaf*, 81 N. Y. 268; *Wykoff* v. *Taylor*, Daily Reg., Aug. 10, 1886; *Third Nat. Bk.* v. *Cornes*, 24 Week. Dig. 292; *Madden* v. *Benedict*, 20 id. 30; *Greenfield* v. *M. M. L. Ins. Co.*, 47 N. Y. 430.)

ANDREWS, J. It is undisputed that the plaintiffs purchased and paid for "regular" oil; that is, oil free from charge for storage. The situation of the several parties when

the transaction with the bank occurred was this: The plaintiffs desired to pay for and get delivery of the oil, and to procure the funds with which to make the payment. The firm of Hilton & Waugh had failed, or were about to fail, and desired to secure the oil to deliver on their contract. The bank held a large quantity of oil belonging to Hilton & Waugh as security for loans to that firm. The bank, at the request of Hilton & Waugh, consented to transfer forty-three thousand barrels of the oil in its hands to the plaintiffs to answer their contract of sale, on receiving from the plaintiffs the purchase-price. The bank, at the same time, to put the plaintiffs in funds, agreed to loan them $28,917.24, which, with $5,000 which they agreed to deposit with the bank, would constitute a fund equal to the full purchase-price of the forty-three thousand barrels. The arrangement was consummated in this way. The bank transferred to the plaintiffs, on their books, oil certificates representing forty-three thousand barrels, and loaned the plaintiffs the sum of $28,917.24, holding the certificates so transferred as security for the loan. The plaintiffs deposited with the bank the proceeds of the loan and the additional sum of $5,000, and drew against the deposit the sum of $33,917.24, that being the full purchase-price of the oil, and the check was received by the bank and passed to the credit of Hilton & Waugh as payment *pro tanto* of their debt to the bank.

The question whether the bank, as a part of the arrangement, agreed that the oil, to be transferred to the plaintiffs, should be free oil, that is, oil upon which all storage charges shall be paid to the time of the transfer, was sharply litigated on the trial. There was, we think, ample evidence to support the affirmative of this contention. Under the rules of the Petroleum Exchange only such oil was a good delivery upon the contract between the plaintiffs and Hilton & Waugh. The bank acted as a clearing-house for the exchange, and was familiar with its rules. There can be no question that the plaintiffs understood that they were to receive a transfer from the bank of "regular" oil. The bank accepted from the plaintiffs the pur-

chase-price of free oil and applied it on its debt against Hilton & Waugh. It is clear that the bank understood the nature of the contract between the plaintiffs and Hilton & Waugh, and it is contrary to every reasonable intendment that the plaintiffs would have paid for "regular" oil and have accepted oil subject to storage charges of $2,924.35, or that the bank, when it agreed to transfer oil to the plaintiffs on receiving the price of "regular" oil, contemplated at that time a transfer of oil incumbered by storage charges.

It is not pretended that the plaintiffs had knowledge of the particular certificates held by the bank, or the charges for storage against the oil. The question of law presented on this record turns upon the construction of the findings of the referee. It is claimed, on the part of the plaintiffs, that the referee found that the bank undertook and agreed with the plaintiffs to transfer oil free from charges. It is insisted, on the part of the defendant, that the referee put his judgment against the bank on a custom of the trade which the defendant insists was not binding upon the bank, and does not control the transaction in question. The referee found in his fifth finding that Hilton & Waugh became obligated by the contract to deliver to the plaintiffs, forty-three thousand barrels of petroleum oil, "represented by certificates known as United Pipe Line certificates, with storage charges thereon paid to the date of such delivery." In the seventh finding he finds that the bank, having certificates representing one hundred and fifty thousand to two hundred thousand barrels of oil pledged to it by Hilton & Waugh as security for loans, at the request of the said firm and of the plaintiffs, "undertook and agreed to transfer and deliver to the plaintiffs' firm the certificates so hypothecated with it, or in certificates into which the certificates so hypothecated had been converted, certificates to the amount of, or representing *such* forty-three thousand barrels of oil, which, under the custom, necessarily would be United Pipe Line certificates, and have storage charges paid to the date of delivery." Reading the two findings together they import that the bank agreed to transfer *such* oil as Hilton & Waugh

had obligated themselves to deliver, viz., oil with storage charges paid to date of delivery. The clause commencing, " which under the custom," etc., at the conclusion of the seventh finding, may fairly be construed as meaning that the custom was also in conformity with the agreement, and that the bank was bound by the custom of the trade. The prevailing party is entitled to the most favorable construction of the findings of a referee to uphold the judgment (*Hill* v. *Grant*, 46 N. Y. 496.) The circumstances point to such an agreement by the bank as is claimed by the plaintiffs. The justice of the case seems to be on their side of the controversy.

The referee intended, we think, to find that there was an express agreement by the bank to transfer "regular" oil. The General Term reversed the judgment on what appears to us to have been a misconstruction of the referee's report.

We think no error was committed on the trial and the order of the General Term should, therefore, be reversed and the judgment on the report of the referee affirmed.

All concur, except GRAY, J., not voting.

Order reversed and judgment affirmed.